ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI (DJ 2025-063B)

| | | |
|---|---|---|
| JOSÉ MANUEL CRUZ REYES, Recurrente, v. DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN, Recurrida. | TA2026RA00286 | REVISIÓN procedente del Departamento de Corrección y Rehabilitación. Remedio administrativo núm.: CDB-151-26. Sobre: trabajo. |

Panel integrado por su presidenta, la jueza Romero García, el juez Monge Gómez y la jueza Prats Palerm.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 29 de junio de 2026.

La parte recurrente, José Manuel Cruz Reyes (señor Cruz Reyes), instó el presente recurso de revisión, por derecho propio, el 29 de mayo de 2026. En él, recurre de la *Resolución* emitida el 7 de mayo de 2026, por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación. En virtud de esta, la agencia confirmó la respuesta emitida por la Evaluadora de Remedios Administrativos, en la cual esta determinó que carecía de jurisdicción para atender la solicitud presentada por el señor Cruz Reyes.

Examinada la petición de la parte recurrente, así como la posición del Departamento de Corrección y Rehabilitación, confirmamos la determinación recurrida.

I

El 3 de marzo de 2026, el señor Cruz Reyes presentó una *Solicitud de Remedio Administrativo* con el alfanumérico CDB-151-26. Relató que, el 23 de febrero de 2026, realizaba sus labores en el área de la cocina de manera diligente. Explicó que ese día se le instruyó que debía añadir un pollo a cada porción de comida. Alegó que se le imputó de manera infundada una discrepancia en la cantidad de pollos sobrantes al finalizar

su jornada de trabajo. Sostuvo que el informe realizado por el Oficial de Corrección el 23 de febrero de 2026, en el que señalaba que él no había seguido instrucciones, carecía de base objetiva y afectaba su plan institucional[1]. Explicó que trabajaba en el área de la cocina desde el 20 de octubre de 2024, sin historial disciplinario alguno.

En virtud de lo alegado, solicitó que se revisara exhaustivamente dicho informe y se eliminara de su expediente institucional. Además, exigió que se le restituyera cualquier beneficio afectado como consecuencia del informe negativo[2].

Ante dicho requerimiento, el 9 de marzo de 2026, notificada el 11 de marzo de 2026, la División de Remedios Administrativos respondió que carecía de jurisdicción para atender su solicitud por este no haber agotado el trámite administrativo correspondiente.

Surge del expediente que, el 20 de marzo de 2026, la parte recurrente presentó una solicitud de reconsideración, la cual fue acogida por la agencia el 3 de abril de 2026.

El 7 de mayo de 2026, notificada el 12 de mayo de 2026, la División de Remedios Administrativos emitió una *Resolución*[3]. En esta, confirmó y

---

[1] El señor Cruz Reyes sostuvo que el informe u escrito realizado por el Oficial Correccional también carecía de fundamentos.

[2] En igual fecha, 3 marzo de 2026, el recurrente presentó otra *Solicitud de Remedio Administrativo* con el alfanumérico **CDB-150-26**. En esta, relató los mismos hechos que en el remedio solicitado en el alfanumérico **CDB-151-26**. Afirmó que fue suspendido de su área de trabajo desde el 23 de febrero de 2026, hasta el 2 de marzo de 2026. A su vez, solicitó que: (1) se revisara su caso de manera objetiva; (2) se verificaran las cámaras de seguridad; (3) se dejara sin efecto la suspensión impuesta; (4) se eliminara cualquier anotación injustificada de su expediente; y, (5) se le garantizara su derecho al debido proceso de ley.

Por otro lado, aunque el recurrente no lo mencionó en su recurso, este anejó documentación correspondiente a la *Solicitud de Remedio Administrativo* con el alfanumérico **CDB-221-26,** la cual presentó el 20 de marzo de 2026. Surge del expediente que el recurrente dirigió su solicitud al señor Benjamín Velázquez Rivera, a quien le requirió copia de los escritos de los informes realizados el 23 de febrero de 2026. El 29 de abril de 2026, notificada el 6 de mayo de 2026, la División de Remedios Administrativos emitió una *Respuesta*. En esta, se acompañó la *Respuesta del área concernida/Superintendente* emitida por el señor Velázquez Rivera, en la que este consignó lo siguiente: "[l]uego de auscultar en el área de cocina, en los libro[s] de novedades se encontró [un] informe realizado por el oficial, donde indica que el confinado no siguió instrucciones. Ver hoja adjunto [*sic*]".

[3] El 7 de mayo de 2026, la División de Remedios Administrativos emitió una *Resolución* en la solicitud **CDB-150-26**, sustancialmente idéntica a la del **CDB-151-26**.

amplió la *Respuesta* emitida el 9 de marzo de 2026 por la Evaluadora de Remedios Administrativos. En particular, concluyó lo siguiente:

> **Se orienta al recurrente que nunca se le radicó una querella administrativa solo se realizó un informe de parte del supervisor de alimentos y en el libro de novedades de los cuales fueron entregados al área sociopenal**. Es importante señalar que **el Comité de Clasificación y Tratamiento es el organismo que tiene la potestad de asignar y dar de baja en cuanto al plan institucional**, es por esa razón que el 21 de abril de 2026 fue [que] se presentó el recurrente ante el Comité; se tomó el acuerdo de darle de baja de las labores en el área de la cocina.

(Énfasis suplido).

En desacuerdo, el 29 de mayo de 2026, el señor Cruz Reyes instó el recurso de revisión judicial que nos ocupa. En síntesis, alega que el foro administrativo erró al no notificarle los informes realizados el 23 de febrero de 2026, concernientes a su desempeño laboral. Esto, en violación a su derecho a un debido proceso de ley y en contravención a la Ley Núm. 38-2017, según enmendada, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9601, *et seq.*

Por ello, solicita de este foro revisor que lo reintegre a su trabajo, aunque sea en otra plaza, dado que necesita seguir su plan institucional. Arguye que nunca había tenido un informe negativo y que actualmente participa de un curso que ofrece la Universidad de Puerto Rico. Además, solicita que se ordene la remoción del informe disciplinario de su expediente, como también que se realice una investigación en el área de la cocina.

El 16 de junio de 2026, le concedimos un término adicional al Departamento de Corrección y Rehabilitación para presentar su oposición. El 26 de junio de 2026, dicha agencia presentó su oposición, por conducto de la Oficina del Procurador General. Evaluados los argumentos de las partes, resolvemos.

II

A

La norma reiterada es a los efectos de que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues son estos los que cuentan con el conocimiento experto de los asuntos que les son encomendados. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021). Además, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad de la actuación de la agencia. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013). Debido a que toda sentencia o determinación administrativa está protegida por una presunción de corrección y validez, la parte que acude a este Tribunal de Apelaciones tiene el deber de colocar a este foro en posición de conceder el remedio solicitado. *Morán v. Martí,* 165 DPR 356, 366 (2005).

A su vez, el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a determinar: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos de la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo; y, (3) si las conclusiones de derecho fueron correctas. *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).

Así pues, como norma general, las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas". *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006). Por ello, **la revisión judicial ha de limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron**. *Torres v. Junta Ingenieros*, 161 DPR 696, 708 (2004).

De otra parte, las conclusiones de derecho de las agencias administrativas serán revisables en toda su extensión. *Vázquez, et al. v.*

*DACo*, opinión de 21 de mayo de 2025, 2025 TSPR 56, a la pág. 28, 215 DPR ___; *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR, a la pág. 941. Sin embargo, esto no significa que los tribunales podemos descartar libremente las conclusiones e interpretaciones de la agencia. *Otero v. Toyota*, 163 DPR 716, 729 (2005).

En fin, como ha consignado el Tribunal Supremo de Puerto Rico, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otro*, 206 DPR, a la pág. 819, que cita a *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

B

La Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1, dispone que será política pública del Estado reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva, y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social. *López Borges v. Adm. Corrección*, 185 DPR 603, 619 (2012).

Conforme al Plan de Reorganización Núm. 2-2011[4], el Departamento de Corrección aprobó el *Manual para la Clasificación de los Confinados* (Manual de Clasificación), Reglamento Núm. 9151 de 22 de enero de 2020, cuyo propósito es establecer un sistema organizado para

---

[4] Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, 3 LPRA Ap. XVIII.

ingresar, procesar y asignar a los confinados y confinadas a instituciones y programas del Departamento. Artículo II del Manual de Clasificación, a la pág. 2.

En particular, la Sección 1 del Manual de Clasificación establece que el Comité de Clasificación y Tratamiento es el responsable de evaluar las circunstancias y necesidades de los miembros de la población correccional y de estructurar el plan institucional para cada una y cada uno de ellos[5]. El mencionado Comité tiene la facultad de recomendar confinados y confinadas a los programas y las áreas de servicios, así como a pases con o sin escolta. Sec. 2, Art. IV (A)(2) del Manual de Clasificación, a la pág. 20. A tales efectos, dicho Comité tiene el deber de establecer el plan institucional para todo miembro de la población correccional de nuevo ingreso, el cual incluye el nivel inicial de custodia, su vivienda, **trabajo**, estudio, adiestramiento vocacional, tratamiento especializado debido a cualquier condición de salud, u otros programas y servicios. Sec. 2, Art. IV (A)(1) del Manual de Clasificación, a la pág. 21.

C

El *Manual de Normas y Procedimientos sobre Oportunidad de Empleo y Trabajo para Miembros de la Población Correccional*, Manual Núm. AC-PROG.009 de 22 de junio de 2000 (Manual de Empleo), se promulgó con el fin de proveer guías uniformes en el referido y seguimiento de los miembros de la población correccional en programas de trabajo. Manual de Empleo, a la pág. 2. En este sentido, "[t]oda asignación de trabajo se hará sobre bases objetivas, dando igual oportunidad y utilizando los siguientes criterios: destrezas, preparación académica o vocacional, habilidades especiales, patrones de conducta, intereses individuales, nivel de custodia y recursos disponibles en la institución". *Íd.*, a la pág. 2.

---

[5] El plan institucional se define como "una evaluación escrita de las necesidades de cada confinado en lo que respecta a programas y servicios, y las actividades programadas que se recomiendan para llenar esas necesidades. El plan será revisado durante el transcurso de encarcelamiento por lo menos una vez al año". Sec. 1 del Reglamento Núm. 9151.

Ahora bien, la participación del miembro de la población correccional en los programas de trabajo será estrictamente voluntaria. Art. III(B) del Manual de Empleo, a la pág. 2. Además, la selección y naturaleza del trabajo estarán sujetas a la discreción del Comité de Clasificación y Tratamiento. *Íd.* Por consiguiente, la asignación de labores o empleo será responsabilidad de dicho Comité, quien tomará en consideración las recomendaciones del técnico socio-penal a cargo del caso o del superintendente de la institución. Art. III(C) del Manual de Empleo, a la pág. 3. Asimismo, la asignación a los programas de trabajo se realizará tomando en cuenta la seguridad de la institución y del miembro de la población correccional. *Íd.*

En relación con las evaluaciones periódicas del plan institucional del miembro de la población correccional, el Comité de Clasificación y Tratamiento determinará si corresponde ratificar, revocar o modificar la asignación inicial, teniendo en cuenta los siguientes criterios: "1) cambios de salud o condición física del miembro de la población correccional; 2) grados académicos o vocacionales alcanzados; 3) cambios en la clasificación, patrones de conducta del miembro de la población correccional o sanciones disciplinarias; 4) recomendaciones del supervisor en el área de trabajo; y 5) razones de seguridad relacionadas con el miembro de la población correccional o la constitución". Art. IV(B) del Manual de Trabajo, a la pág. 6.

D

El *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional*, Reglamento Núm. 8583 de 4 de mayo de 2015, tiene el propósito de ofrecer a los miembros de la población correccional un mecanismo al que puedan recurrir, en primera instancia, con el fin de minimizar las diferencias entre estos y el personal, y evitar o reducir la presentación de pleitos en los tribunales. Reglamento Núm. 8583, a las págs. 1-2.

En cuanto a la jurisdicción de la División de Remedios Administrativos, esta tendrá jurisdicción, entre otros asuntos, para atender toda solicitud de remedio que esté relacionada directa o indirectamente con "[a]ctos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o en su plan institucional". Regla VI (1)(a) del Reglamento Núm. 8583, a la pág.13. Véase, *Pueblo v. Contreras Severino*, 185 DPR 646, 661-662 (2012). De otra parte, no habrá jurisdicción cuando el miembro de la población correccional no haya agotado el trámite administrativo concedido por otros reglamentos, excepto que la solicitud se refiera al incumplimiento del trámite correspondiente ante aquel organismo. Regla VI (2)(a) del Reglamento Núm. 8583, a la pág.14. De igual forma**, la División de Remedios Administrativos carecerá de jurisdicción cuando se impugne una decisión emitida por algún comité conforme a los reglamentos aprobados**, salvo que la solicitud de remedio se refiera al incumplimiento del trámite correspondiente impuesto por un tribunal. Regla VI (2)(e) del Reglamento Núm. 8583, a la pág.15.

III

En este caso, el señor Cruz Reyes presentó ante la División de Remedios Administrativos una solicitud de remedio en la que sostuvo que el informe realizado el 23 de febrero de 2026, carecía de base objetiva y afectaba su plan institucional. Solicitó que se le restituyera cualquier beneficio y que el mencionado informe se eliminara de su expediente. Sin embargo, el 9 de marzo de 2026, la División de Remedios Administrativos desestimó la solicitud del señor Cruz Reyes por carecer de jurisdicción para atender el reclamo.

Surge del expediente que, el 21 de abril de 2026, el señor Cruz Reyes compareció ante el Comité de Clasificación y Tratamiento, el cual acordó darle de baja de las labores en el área de la cocina. En consecuencia, y en atención a la solicitud de reconsideración presentada por el recurrente, la División de Remedios Administrativos confirmó y

amplió la desestimación de la solicitud por falta de jurisdicción. En particular, instruyó al señor Cruz Reyes a los efectos de que el aludido Comité era la entidad con autoridad para asignar y dar de baja de los programas o los servicios al miembro de la población correccional.

Así las cosas, concluimos que la agencia actuó correctamente al disponer que la División de Remedios Administrativos carecía de jurisdicción para atender la solicitud de remedio instada por el recurrente, mediante la cual impugnaba su remoción de las labores que desempeñaba en el área de la cocina, así como el informe realizado por el Oficial de Corrección.

En definitiva, su reclamación estaba dirigida a cuestionar la decisión de separarlo de sus funciones emitida por el Comité de Clasificación y Tratamiento. Recordemos que la Regla VI (2)(e) del Reglamento Núm. 8583 expresamente excluye de su jurisdicción la solicitud de remedio que pretenda impugnar una decisión emitida por algún comité. Cónsono con lo anterior, concluimos que el recurrente no logró demostrar que la agencia recurrida actuase de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron. Por tales razones, procede confirmar la determinación recurrida.

IV

Por los fundamentos anteriormente expuestos, **confirmamos** la determinación emitida el 7 de mayo de 2026, por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
